UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERIC R., <br><br> Plaintiff, <br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 3:20-cv-05637-TLF <br><br> ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance ("DIB") and supplemental security income ("SSI") benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

I. ISSUES FOR REVIEW

A. Whether the ALJ Erred at Step Two in Finding Plaintiff's Major Depressive Disorder was Not a Severe Impairment

B. Whether the ALJ Erred in Finding Plaintiff's Impairments did not Meet or Equal the Severity of a Listed Impairment

C. Whether the ALJ Properly Evaluated Medical Opinion Evidence

D. Whether the ALJ Properly Evaluated Plaintiff's Subjective Symptom Testimony

E. Whether Plaintiff is Entitled to Remand for an Award of Benefits

## II. BACKGROUND

On September 7, 2016, Plaintiff filed applications for DIB and SSI, alleging in both applications a disability onset date of June 6, 2013. Administrative Record ("AR") 251–62. Plaintiff's applications were denied upon official review and upon reconsideration. AR 91–92, 117–18. A hearing was held before Administrative Law Judge ("ALJ") Andrew Grace on April 10; 2018. AR 35–67. Following this hearing, ALJ Grace ordered a consultative medical examination, after which a second hearing took place before ALJ Malcolm Ross on January 29, 2019. AR 68–90. On May 1, 2019, ALJ Ross issued a decision finding that Plaintiff was not disabled. AR 12. On May 1, 2020, the Social Security Appeals Council denied Plaintiff's request for review. AR 1–6.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## IV. DISCUSSION

In this case, the ALJ found that Plaintiff had the severe, medically determinable impairments of cervical spine degenerative disc disease with radiculopathy, thoracic spine degenerative disc disease with thoracolumbar scoliosis, lumbar spine

degenerative disc disease with radiculopathy, and status-post surgery. AR 18. Based on the limitations stemming from these impairments, the ALJ found that Plaintiff could perform a reduced range of sedentary work. AR 21. Relying on vocational expert testimony, the ALJ found at step four that Plaintiff could not perform his past relevant work, but could perform other jobs existing in significant numbers in the national economy; thus, the ALJ found at step five that Plaintiff was not disabled. AR 26.

### A. Whether the ALJ Erred at Step Two

Plaintiff assigns error to the ALJ's findings at step two of the sequential evaluation, asserting that his major depressive disorder merited inclusion as a severe, medically determinable impairment. Dkt. 14, p. 13.

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520, § 416.920. If the claimant is found to be disabled or not disabled at any particular step thereof, the disability determination is made at that step and the sequential evaluation process ends. *See id.* To be found disabled, a claimant must have a "physical or mental impairment" that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908. It "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508, § 416.908.

At step two of the sequential disability evaluation process, "the medical severity" of a claimant's impairments is considered. 20 C.F.R. 404.1520(a)(4)(ii), § 416.920(a)(4)(ii). If the claimant has no "severe medically determinable" impairment,

then he or she will be found not disabled. *Id.* An impairment is "not severe" if it does not "significantly limit [the claimant's] mental or physical abilities to do basic work activities." 20 C.F.R. § 404.1521(a), § 416.920(a); *see also* Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856, at *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856, at *3; *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry, however, is a *de minimis* screening device used to dispose of groundless claims. *See Smolen*, 80 F.3d at 1290.

Here, the ALJ found that Plaintiff's moderate recurrent major depressive disorder "does not cause more than minimal limitation in [Plaintiff]'s ability to perform basic mental work activities and is therefore non severe." AR 18. The ALJ reached this determination by giving low weight to the opinion of psychiatric consultative examiner Peter Weiss, Ph.D. AR 18–19.

Dr. Weiss evaluated Plaintiff on August 27, 2015, performed a clinical interview and mental status examination, and diagnosed recurrent moderate major depressive disorder. AR 400. In the mental status examination, he noted that Plaintiff showed no behavioral abnormalities, but reported feeling depressed and experiencing vegetative

1  symptoms, and that his affect was dysthymic. AR 398. He went on to find that Plaintiff's
2  orientation, recent and remote memory, fund of information, judgment, attention and
3  concentration, and calculation capabilities were good; his abstract thinking was
4  adequate, insight was fair, and ability to assess similarities and differences was less
5  than adequate. AR 399–400. Based on this examination, he also concluded that
6  Plaintiff's ability to sustain concentration and persistence was "severely impaired" and
7  his "overall adaptive impairment" was "moderate." AR 400.
8      In rejecting this opinion, the ALJ found that (1) it "seem[ed] to be based largely
9  on [Plaintiff's] self report[,]" to the exclusion of his medical history; (2) Plaintiff had not
10 made an effort to secure treatment for his symptoms, and his activities of daily living
11 supported a higher level of functioning than that indicated by Dr. Weiss; (3) Dr. Weiss's
12 opinion that Plaintiff's depression was linked to his physical pain symptoms was an
13 opinion beyond his area of expertise; and (4) the ultimate findings were inconsistent
14 with Dr. Weiss's "excellent" mental status examination findings. AR 18–19. The Court
15 focuses on the ALJ's second reason—specifically, that Plaintiff's lack of effort in
16 securing treatment was inconsistent with Dr. Weiss's ultimate findings. If supported by
17 substantial evidence, this is a specific and legitimate reason to reject Dr. Weiss's
18 opinion and, with it, the allegation that Plaintiff's depression was a severe impairment.
19     The ALJ also noted a lack of treatment throughout the relevant period. AR 19. "If
20 the frequency or extent of the treatment sought by an individual is not comparable with
21 the degree of the individual's subjective complaints . . . we may find the alleged intensity
22 and persistence of [his] symptoms are inconsistent with the overall evidence of record."
23 SSR 16-3p, *available at* 2017 WL 5180304, at *9. Despite alleging significant
24
25

depression to Dr. Weiss, Plaintiff acknowledged that he had not undergone any mental health treatment since he saw a counselor at age ten for behavior problems. AR 398. Subsequent records show that he did not pursue such treatment through the relevant period either before or after his evaluation with Dr. Weiss. Therefore, Plaintiff's failure to seek treatment was a specific and legitimate reason for discounting Dr. Weiss's findings, and the Court need not address the ALJ's other reasons, as any error would be harmless. *See Batson v. Commissioner of Social Security,* 359 F.3d 1190, 1197 (9th Cir. 2004) (concluding that, even if the record did not support one of the ALJ's stated reasons for disbelieving claimant's testimony, any error was harmless). Because the ALJ properly discounted Dr. Weiss's opinion, the ALJ's finding that Plaintiff's major depressive disorder was non-severe was supported by substantial evidence.

### B.  Whether the ALJ Erred at Step Three

Next, the Court turns to Plaintiff's argument that the ALJ erred when, at step three of the five-step disability evaluation, the ALJ found Plaintiff's impairments did not meet or equal the severity of any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1—specifically, listing 1.04A. Dkt. 14, pp. 3–8.

At step three of the five-step sequential process, the ALJ must evaluate the claimant's impairments to decide whether they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1. 20 C.F.R § 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

If any of the claimant's impairments medically meet or equal a listed impairment, he or she is deemed disabled. *Id.* The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. *Tackett*, 180 F.3d at

1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." *Id.*; *see also* SSR 96-8p, 1996 WL 374184, at *2 (the determination that is conducted at step three must be made on the basis of medical factors alone).

An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248, at *2.

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings).

Here, at step three the ALJ stated that Listing 1.04 was considered, but the evidence did not demonstrate plaintiff had a compromised nerve root or spinal cord, neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, or positive straight-leg raising tests for a period of 12 months or more. The ALJ also found that the evidence did not show Plaintiff suffered from severe burning or painful dysesthesia requiring the need for changes in position or posture every two hours, or from pseudoclaudication that would result in the inability to ambulate effectively for the required period of time. AR 21. Plaintiff asserts

this was error, arguing specifically that the ALJ should have found his spinal condition met the criteria of Listing 1.04. Dkt. 14 at pp. 3–8.

> Listing 1.04 provides:
> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

The medical evidence in the record does not support a finding that plaintiff's condition met or equaled the listing at step three, because there is insufficient evidence to show that the alleged impairment medically meets or equals the criteria of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. *Tackett*, 180 F.3d at 1098. Specifically, the record fails to show the existence, for 12 continuous months, of nerve root compression (Listing 1.04A), spinal arachnoiditis (Listing 1.04B), or pseudoclaudication (Listing 1.04C), or pseudoclaudication resulting in an inability to ambulate," as medical expert Ronald Kendrick, M.D., testified at the hearing. AR 73–88. Plaintiff argues only in support of a finding that he met or equaled 1.04(A), nerve root compression, but in doing so relies on a false equivalence between nerve root impingement, which was

documented, and nerve root compression, which was not. *See* Dkt. 18, p. 2; AR 78. As plaintiff has not established the evidentiary support necessary to meet the criteria of Listing 1.04A, 1.04B, or 1.04C, the ALJ did not err in deciding against the plaintiff at step three.

### C. Whether the ALJ Erred in Evaluating Medical Opinion Evidence

Plaintiff assigns error to the ALJ's evaluation of the medical opinion evidence—specifically, the opinion of Julie Calderon, ARNP. Dkt. 14, p. 12.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of Social Security Administration*, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

A nurse practitioner is not an "acceptable medical source" as that term is defined in the Social Security Regulations applicable to this case, and thus may be given less weight than those of acceptable medical sources. *See Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. [§ 404.1513(a), (d)][,] [§ 416.913(a), (d)] (licensed physicians and licensed or certified psychologists are "acceptable medical sources"). The opinions of sources such as nurse practitioners instead generally are treated in the same manner as testimony of lay witnesses. *See* 20 C.F.R. [§ 404.1513(d)][,] [§

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 9

416.913(d)] (Commissioner may also use evidence from other sources to show the severity of claimant's impairment(s) and how those impairments affects his or her ability to work). Evidence from these "other sources" may be discounted if, as with evidence from lay witnesses in general, the ALJ "gives reasons germane to each [source] for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citations omitted).

ARNP Calderon evaluated Plaintiff on September 22, 2015 for the Washington State Department of Social and Health Services. AR 402–06. She opined that Plaintiff's lumbar degenerative disc disease and lumbar radiculopathy symptoms limited his ability to work, stating that he would need to avoid lifting objects heavier than 10 pounds, frequent twisting or bending, and prolonged sitting. AR 403. She stated that he would be limited to 1-10 hours of participation in work per week and could perform only sedentary work. AR 403–04. Finally, she indicated that treatment would require physical rehabilitation for possible spinal injections as well as physical therapy. AR 404–05.

The ALJ gave moderate weight to this opinion, stating that while it was mostly consistent with the opinions of other treating and examining sources, (1) it was unclear what ARNP Calderon meant by "prolonged sitting," and (2) her opinion was rendered very early in the relevant period. AR 25–26.

With regard to the ALJ's first reason, a finding that a medical opinion does not contain specific functional limitations, or is otherwise too vague to be useful in making a determination, can serve as a valid reason for discounting that opinion. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (holding that statement that the plaintiff would have "decreased concentration skills" was too vague to be useful in the disability determination). Here, Nurse Calderon did not provide a precise definition as to the

1  "prolonged sitting" that Plaintiff would need to avoid. While this is a germane reason to
2  reject a limitation on sitting, it is not sufficient to discount her opinion as a whole
3  regarding other limitations. To hold otherwise would conflict with the requirement that
4  "[t]he ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d
5  1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).

6       As to the ALJ's second reason, the fact that ARNP Calderon's opinion was
7  rendered earlier in the relevant period does not serve as a reason to discount her
8  opinion when Plaintiff's alleged onset date was more than two years before the opinion
9  was rendered. Plaintiff did not allege, nor did the ALJ find, that Plaintiff's condition
10 changed substantially within the relevant period. Thus, the ALJ's discounting of Nurse
11 Calderon's opinion was not supported by substantial evidence.

12      Harmless error principles apply in the Social Security context. *Molina*, 674 F.3d
13 at 1115. An error is harmless only if it is not prejudicial to the claimant or
14 "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r*
15 *Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115.
16 The determination as to whether an error is harmless requires a "case-specific
17 application of judgment" by the reviewing court, based on an examination of the record
18 made "'without regard to errors' that do not affect the parties' 'substantial rights.'"
19 *Molina*, 674 F.3d at 1118–19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

20      In this case, the ALJ's error was not harmless. Had the ALJ properly considered
21 ARNP Calderon's opinion, the ALJ may have incorporated limitations from these
22 opinions in making a determination as to Plaintiff's residual functional capacity. Had the

ALJ incorporated such limitations, in turn, the ultimate disability determination may have changed. Accordingly, the ALJ's error was not harmless and requires reversal.

        D.  <u>Whether the ALJ Erred in Discounting Plaintiff's Symptom Testimony</u>

Finally, Plaintiff assigns error to the ALJ's evaluation of his symptom testimony. Dkt. 14, pp. 8–12.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834.

In an October 2016 function report, Plaintiff stated that he had difficulty standing; could not sit for more than a few minutes at time; could not walk more than 250 yards; and spent his time lying in bed. AR 332–34. At the April 10, 2018 hearing, Plaintiff testified that he could only sit, stand, or walk for a short time. AR 53–54, 60. He spent most of the day lying down in bed or in a recliner. AR 56. In fact, he was caught lying down on the floor a few times at his last job, even after his employer gave him the option to alternate between sitting and standing when he worked. AR 58. Shortly thereafter, Plaintiff lost his job. AR 45–46, 58.

He then attempted to attend school for his bachelor's degree, taking online classes and doing his schoolwork on a laptop lying in bed. AR 59. At the time of the

hearing, he was spending eight hours lying down. Sometimes, he stayed in bed the whole day, depending on what he had done the day before. AR 59.

In finding this testimony not fully credible, the ALJ reasoned (1) that it was inconsistent with Plaintiff's activities of daily living, and (2) it was inconsistent with the opinions of treating, examining, and non-examining sources, none of whom opined that Plaintiff could not maintain a regular work schedule. AR 23.

With respect to the ALJ's first reason—that Plaintiff's daily activities did not support the level of impairment alleged in her symptom testimony—the activities listed do not amount to a clear and convincing reason to reject Plaintiff's testimony. A claimant's participation in everyday activities, indicating capacities that are *transferable to a work setting*, may constitute grounds for an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (emphasis added). Yet, disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Reddick*, 157 F.3d at 722 (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits)).

The ALJ's decision listed two activities to support the adverse credibility determination—Plaintiff could "care for his three children, he is able to drive, and he can even do grocery shopping, including carrying bags of groceries," in addition to playing video games and fishing. AR 23. Neither of these activities indicate Plaintiff possessed capacities that would be transferable to a work setting, let alone indicate such capacities with any degree of specificity. In his function report, Plaintiff indicated that his children helped him around the house, as opposed to his helping them. AR 333. At the April

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 13

2018 hearing, he stated that his wife took care of their two youngest daughters' extracurricular activities, while his oldest, high school-aged daughter participated in a high school club on her own. AR 56–57. The ALJ did not make any findings as to how the ability to drive, carry light bags of groceries, and play video games and fish—all at levels of undetermined frequency and intensity—contradicted Plaintiff's testimony. AR 23. Without more, Plaintiff's activities are not a clear and convincing reason supporting an adverse credibility determination. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

With respect to the ALJ's second reason, an inconsistency with the objective evidence may serve as a clear and convincing reason for discounting a claimant's testimony. *Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ's decision may not reject a claimant's subjective symptom testimony "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

Here, the objective evidence cited by the ALJ consisted of results from a consultative examination with Gary Gaffield, D.O. AR 23. Specifically, the ALJ noted Dr. Gaffield's findings that Plaintiff was fully oriented, showed good grip and full dexterity, was able to rise in a chair in the waiting room and again in the examination room without difficulty, and had negative straight leg-raise test. AR 23 (citing AR 1504). In

addition, the ALJ noted that although Dr. Gaffield found some sensory loss on the right L5-51 dermatones and restricted motion in his spine, he was negative for Tinel's, Romberg, and Babinski signs. AR 23 (citing AR 1505). These findings, without more, do not contradict Plaintiff's testimony that he needed to lie down for the greater part of a typical day. Thus, the ALJ's rejection of Plaintiff's testimony was not supported by the "specific, cogent reasons" required for such a determination. *Lester*, 81 F.3d at 834.

### E. Whether Plaintiff is Entitled to Remand for an Award of Benefits

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court retains discretion to remand for further proceedings or for award of benefits. 80 F.3d at 1045.

Here, outstanding issues require resolution before benefits may be awarded. Conflicts exist between the opinion of Nurse Calderon and those of the other medical sources, Drs. Kendrick, Gaffield, and Irwin, as well as between these opinions and Plaintiff's testimony. AR 24–26. "In any event, the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1042 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995)). Remand is required so that the ALJ may evaluate the medical opinions, as well as any new evidence and any new testimony from Plaintiff, and determine whether Plaintiff is disabled.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when he determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings. On remand the ALJ is directed to reconsider evidence from Nurse Calderon and Plaintiff, in addition to any new evidence Plaintiff may present.

Dated this 1st day of September, 2021.

Theresa L. Fricke
United States Magistrate Judge